IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Marla J. Aaron, | Case No. 3:09 CV 2549 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Ford Motor Company, et al., | |
| Defendants. | |

### INTRODUCTION

In this hybrid action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Plaintiff Marla Aaron alleges that her employer breached the collective bargaining agreement ("CBA"), and that her union, along with several union officials, breached their duty of fair representation. She also alleges she was discharged in retaliation for filing a sexual harassment claim against her supervisor.

Pending before the Court are Motions for Summary Judgment filed by (1) International Union UAW and UAW Local 1216 (collectively, "Union"), and individual union officials Noble "Bud" Grohe, Michael Miller, Jerard Coiffard and Mark Cullen (Doc. No. 39); and (2) Plaintiff's employers, Automotive Components Holding, LLC ("ACH") and Ford Motor Company ("Ford") (Doc. No. 41). Plaintiff opposed both Motions (Doc. Nos. 48–49); ACH and Ford replied (Doc. No. 51).

## BACKGROUND

In September 2004, Plaintiff began working for Ford as an assembler at the ACH plant in Sandusky, Ohio. Plaintiff subsequently worked several hourly positions: production associate, manufacturing technician and vacuum attendant. She was a member of the Union and, during a portion of her employment, was supervised by George Keller.

Plaintiff alleges Keller sexually harassed her on multiple occasions in 2007. On the first occasion, Keller called Plaintiff "Black Pudding," and grabbed her face and kissed her. The incident was reported to Plaintiff's union representative, Bud Grohe. Grohe, along with Dick Ball, a superintendent at the ACH plant, met with Keller and instructed him to leave Plaintiff alone (Doc. No. 41-17 at 63–64;[1] Doc. No. 41-12). Plaintiff alleges Keller continued harassing her after this incident and that she reported each subsequent incident to Grohe, who in turn reported some of these subsequent incidents to plant management. *Id*. at 89.

Later, on August 22, 2007, Plaintiff reported to the plant Human Resources department that Keller allegedly sexually harassed her on multiple occasions between February and August 2007. Several co-workers ridiculed her for filing the complaint. As a result of her co-workers' comments, union representatives permitted Plaintiff to leave work that day and begin a medical leave of absence.

John Morgan, a plant labor representative, investigated Plaintiff's complaint against Keller. Morgan interviewed Plaintiff's co-workers whom Plaintiff claimed witnessed each instance of Keller's inappropriate conduct. Morgan, however, was unable to corroborate any of Plaintiff's allegations. The only touching reported by Plaintiff's co-workers were non-threatening, periodic hugs

---

[1] All citations to Plaintiff's deposition (Doc. No. 41-17) are made to the deposition page, not the .pdf page number. All other record citations are made to the CM/ECF document number followed by the .pdf page number.

between both male and female employees. Morgan concluded there was no evidence Keller sexually harassed Plaintiff and closed his investigation on September 5, 2007.

Plaintiff returned from her medical leave on September 23, 2007. Three days later, Rosetta Brown reported that Melissa Norris overheard Plaintiff threaten to shoot another employee, Mattie Johnson, approximately three months earlier. Because Ford maintains a zero tolerance policy against workplace violence and threats of violence, a team immediately began investigating the alleged threat. The investigative team included Mark Tessari, then-plant labor representative, as well as several other union and employer representatives (Doc. No. 41-3 at ¶ 10). Tessari interviewed Norris, who reportedly overheard Plaintiff say she was going to "get her gun and shoot Mattie Johnson" as well as "jump on" Mattie Johnson (Doc. No. 41-3 at ¶ 12). The investigation also turned up a possible motivation for the alleged threat: Johnson apparently received a job at the plant that Plaintiff desired for herself. Plaintiff told her union representative, Grohe, that she would make the company "pay" for "fucking her out of a bid that bitch ass Mattie [Johnson] got" (Doc. No. 41-3 at ¶ 14). Plaintiff denied ever making the threat.

There were also allegations Plaintiff had a gun in her car, causing the local sheriff's department to be called to the plant. Plaintiff consented to a search of her car, but deputies did not find a gun. Nonetheless, the investigative team determined Plaintiff had violated the plant's zero tolerance policy against threats of violence in the workplace, and Plaintiff was terminated on September 26, 2007.

Two days later, Plaintiff filed a union grievance challenging her discharge. While the grievance was pending, Ford offered Plaintiff a $70,000 buyout, even though she was ineligible due to her termination, which she rejected (Doc. No. 40-4 at ¶ 3). In May 2009, the Union reached a

3

settlement agreement with Ford regarding the grievance that would permit Plaintiff to be reinstated on a probationary basis without back pay. Plaintiff, however, again rejected the settlement agreement because she believed she was entitled to back pay. When Plaintiff refused to sign the reinstatement agreement, the plant sent her a certified letter instructing her to report to work by June 12, 2009. Plaintiff neither returned to work nor responded to the letter, and the settlement agreement lapsed. Plaintiff failed to file an internal appeal, as required by her Union (Doc. No. 48 at 6).

In September 2009, Plaintiff filed a complaint *pro se* in state court, alleging violations of state and federal law. Defendants later removed the case to this Court.

## DISCUSSION

### Standard of Review

Federal Civil Rule 56(c) states summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, it determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

### Exhaustion of Internal Union Remedies

The Union argues summary judgment is appropriate because Plaintiff failed to exhaust her internal union remedies. Plaintiff admits her failure, but argues that exceptions apply to the rule which would allow her case to proceed. Specifically, she argues that exhaustion of her union

remedies would have resulted in an "unreasonable delay," forcing her to exhaust her limited financial resources by submitting to potentially lengthy internal union procedures (Doc. No. 48 at 6).

The Union is correct that "[a]n employee seeking a remedy for his employer's breach of the collective bargaining agreement and his union's breach of its duty of fair representation must exhaust the grievance and arbitration procedures established by the collective bargaining agreement before maintaining a § 301 suit." *Wiggins v. Chrysler Corp.*, 728 F. Supp. 463, 466 (N.D. Ohio 1989) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53 (1965)).

There are exceptions to this general rule. An employee does not need to exhaust internal grievance and appeals procedures if (1) union officials are so hostile that the employee could not possibly obtain a fair hearing; or (2) the intraunion procedure would be inadequate either to award the full relief the employee seeks under Section 301 or to reactivate the employee's grievance; or (3) exhaustion of intraunion procedure would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Clayton v. Int'l Union*, 451 U.S. 679, 689 (1981). The burden is on the employee to show that the failure to exhaust intraunion remedies should be excused because of one of the factors listed above. *Monroe v. Int'l Union*, 723 F.2d 22, 25 (6th Cir. 1983) (per curiam). Whether to excuse the exhaustion requirement is a matter for this Court's discretion. *Clayton*, 451 U.S. at 689.

Plaintiff's reasons for failing to exhaust her administrative remedies are not persuasive. Although Plaintiff argues she did not work for twenty months, and any further interruption while pursuing administrative remedies would unreasonably harm her, she concedes the remedy afforded by the CBA was sufficient to address her grievance and that she cannot show she would have faced hostility from the Union at every level of the appeals process (Doc. No. 48 at 6). Furthermore,

5

Plaintiff never even attempted to pursue her remedies, and thus has only speculation that such a pursuit would result in an unreasonable delay. *See Wiggins*, 728 F. Supp. 467; *see also Arnold v. UMW*, 293 F.3d 977, 981 (7th Cir. 2002). Plaintiff failed to exhaust her internal union remedies and has no recognized excuse.

### Section 301 Claim

Even if Plaintiff was excused from exhausting her administrative remedies, she still could not survive summary judgment. There is no dispute that Plaintiff alleges a hybrid claim under Section 301 of the Labor Management Relations Act (Doc. No. 47 at 7; No. 41-1 at 8–9), which requires Plaintiff to prove that Ford violated the CBA *and* the Union breached its duty of fair representation. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990). Unless Plaintiff proves *both* violations, she cannot succeed against either party. *Id.* at 560.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). To meet this burden of proof Plaintiff must establish by substantial evidence that the Union acted arbitrarily, discriminatorily or with bad faith. *Kaiser v. United States Postal Serv.*, 785 F. Supp. 648, 660 (E.D. Mich. 1992).

Plaintiff contends the Union's handling of her grievance falls short of the standard set forth in *Vaca* because, while she was reinstated, she did not receive back pay. Plaintiff claims this was

6

unreasonable because the Union never determined whether or not she was even at work during the alleged threat that led to her termination (Doc. No. 48 at 9).

Plaintiff's arguments are not well-taken. Plaintiff has not identified any record facts suggesting the Union acted arbitrarily, discriminatorily or in bad faith. On the contrary, it appears union representative Steve Kemp initially settled the grievance in good faith by persuading Ford to offer Plaintiff a $70,000 buyout even though Plaintiff was ineligible due to her termination (Doc. No. 40-4 at ¶ 3). Plaintiff rejected that offer, telling Kemp she needed her job back because of the benefits (*id.*). Kemp then obtained Plaintiff's reinstatement, though without back pay, and encouraged Plaintiff to accept the offer because Kemp believed she could not prevail at arbitration (*id.* at ¶ 4). The only other fact Plaintiff points to is that she was out of work for twenty months before being reinstated, but that fact does not demonstrate the Union was acting in bad faith.

Although Plaintiff was unhappy she did not receive back pay, that does not make the resolution so unreasonable as to border on irrational, especially because Plaintiff testified getting back to work was most important to her (Doc. No. 41-17 at 260). *See Cole v. Cleo, Inc*., 301 F. App'x 402, 411 (6th Cir. 2008) (finding that union did not breach its duty of fair representation in settling grievance without back pay under the circumstances of employee's termination). Given the circumstances of the resolution of Plaintiff's grievance, and the deferential standard this Court must give to the Union's decision, summary judgment in the Union's favor is appropriate. *See id.* (citing *Air Line Pilots Ass'n Int'l*, 499 U.S. at 78) ("This court's substantive examination of the union's performance must be 'highly deferential'").

Because Plaintiff cannot demonstrate the Union breached its duty of fair representation, her Section 301 claim necessarily fails, and this Court need not, and declines to, address whether Ford breached the CBA.

**Retaliation**

Plaintiff likewise cannot prevail on her retaliation claim against Ford. To make out a *prima facie* case of retaliation, Plaintiff must establish (1) she engaged in a protected activity; (2) Ford knew of her activity; (3) Ford took an adverse employment action against her; and (4) a causal connection exists between her activity and the adverse action. *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). To establish a causal connection, a plaintiff must provide evidence to raise a sufficient inference that the protected activity was the likely reason for the adverse employment action. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

Once Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to provide some legitimate, non-discriminatory reason for its conduct. *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). If that occurs, the burden then shifts back to Plaintiff to demonstrate the reason given by Defendant was simply pretextual. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Ford does not contest the first three elements of Plaintiff's *prima facie* case, and instead focuses on the requirement that Plaintiff demonstrate her termination was causally connected to her protected activity, arguing her termination was too far removed from her complaint of harassment. Plaintiff counters that her termination occurred three days after she returned to work and was based on a statement she allegedly made several months before.

8

The case law on this issue appears unclear. For example, the court in *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), held that temporal proximity alone is generally not sufficient and a plaintiff must put forth some additional evidence of retaliation in order to prevail. *See also Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) (4 months insufficient). In other more recent cases, however, the Sixth Circuit has held that an employee's discharge "soon after" engaging in protected activity is indirect proof of a causal connection between the firing and the activity. *See, e.g., Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (2 months sufficient); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (3 months sufficient); *DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004) (21 days sufficient).

Here, there was approximately one month between Plaintiff filing her claim of sexual harassment and her termination. This time-frame is approximately the same as the court in *DiCarlo* found to be sufficient to establish causation, and shorter than the periods at issue in *Asmo* and *Singfield*. Simply looking at this time period, however, does not take into account the allegations that Plaintiff previously threatened to shoot a fellow employee and the subsequent investigation where Norris, Johnson, and Plaintiff were interviewed, and Plaintiff was discharged pursuant to Ford's zero-tolerance workplace violence policy.

The time period here could, in another case, support a finding of causation. This, however, is not that case. Ford did not become aware of Plaintiff's threat until she returned to work, giving rise to an internal investigation. This breaks the temporal causal chain and, accordingly, Plaintiff fails to demonstrate causation. *See Moon v. Transport. Drivers, Inc.*, 836 F.2d 226, 230–31 (6th Cir. 1987) (finding employee failed to establish causation where even though discharged less than two weeks after filing complaint, other evidence suggested alternative, non-discriminatory reason for discharge).

9

Even if Plaintiff could establish a *prima facie* case of retaliation, however, she cannot demonstrate Ford's legitimate, non-discriminatory reason for her termination -- Plaintiff's violent threats toward another employee -- was simply pretextual. Plaintiff takes issue with several aspects of Ford's investigation, which she contends demonstrate pretext: (1) there was over a three month gap between the time she allegedly made this threat and when it was reported to Ford, and (2) Ford only spent one day investigating the threat prior to terminating her employment.

Although Plaintiff believes Ford's investigation was less than satisfactory, the investigation did not need to be optimal or leave "no stone unturned." *Brathwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* "If there is no material dispute that the employer made a 'reasonably informed and considered decision' that demonstrates an 'honest belief' in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual." *Id.*

Plaintiff fails to explain what else the company investigation should have entailed. Although the threat allegedly occurred three months prior to her termination, Ford was not notified of the threat until September 26, and immediately started an investigation. She does not claim any witnesses were ignored. She points to no evidence suggesting Ford lacked an honest belief that Plaintiff threatened another employee. The investigative team interviewed anyone who might have knowledge of the threat, and although Plaintiff denied making it, evidence suggested otherwise. Plaintiff never denied a motive for the threat to shoot Johnson and, during the investigation, never claimed she was absent from the plant the day of the alleged threat. In short, Plaintiff fails to demonstrate pretext. *See Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 522 (6th Cir. 2002) ("so long as the employer is able to

10

demonstrate that it held an honest belief for its employment action, then the employee cannot establish pretext, even if it is later established that the employer's belief was mistaken").

The record evidence demonstrates Ford was notified that Plaintiff allegedly made a serious violent threat toward another employee, conducted a reasonable investigation into that threat, and only terminated Plaintiff after concluding the allegations were well-founded. Plaintiff has not set forth any evidence demonstrating Ford's decision was based on anything other than its honest belief, based on the credible information from its investigation.

**Sexual Harassment**

There is some confusion over the exact nature of Plaintiff's discrimination claim. Ford argues Plaintiff has no sexual harassment claim pending before this Court based on Keller's action because she neither grieved nor pled a sexual harassment claim. Plaintiff argues she made a good faith attempt to grieve a sexual harassment claim, although she does not contest Ford's assertion that she has not pled a stand-alone sexual discrimination claim.

Federal Civil Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought." "[T]he pleading must contain something more by way of a claim for relief than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a right of action." *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003) (quoting 5 WRIGHT & MILLER, FED. PRAC. & PRO. § 1216, at 163 (2d ed. 1990)).

The Second Amended Complaint alleges Ford terminated her employment in violation of her contractual rights, but makes no claim that Ford is liable for sexual harassment (see Doc. No. 20). Because Plaintiff fails to set forth a sexual discrimination claim, she may not assert that claim now.

11

*See Spadafore*, 330 F.3d at 853–54 (affirming district court's decision declining to review a Fourth Amendment violation where none was adequately plead in the complaint).

### The Individual Defendants' Motion

In her opposition to the Union's Motion, Plaintiff concedes her claims against the individual Defendants Grohe, Miller, Coiffard and Cullen are not supported (Doc. No. 48 at 5). Therefore, the uncontested Motions of the individual Defendants are granted.

### Conspiracy and Punitive Damages

Plaintiff also concedes there is no evidence of a conspiracy between the Defendant Union and the Defendant employers and has essentially withdrawn that claim (Doc. No. 48 at 10). She also concedes her demand for punitive damages. *Id.* Accordingly, summary judgment on these remaining issues is granted as well.

### CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. Nos. 39, 41) are granted, and this case is dismissed.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

May 31, 2011